IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| BEATTIE B. ASHMORE, IN HIS ) | | |
| CAPACITY AS COURT-APPOINTED ) | | |
| RECEIVER FOR RONNIE GENE WILSON ) | No. 8:16-cv-____-JMC | |
| AND ATLANTIC BULLION & COIN, INC., ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | **COMPLAINT** | |
| vs. ) | **(NON-JURY)** | |
| ) | | |
| MELVIN AND MARILYN WHITE, ) | | |
| ) | | |
| Defendants. ) | | |

The Receiver, Beattie B. Ashmore, (the "Receiver") hereby files this Complaint and alleges as follows:

1. Plaintiff is the court appointed Receiver in In Re Receiver, 8:12-cv-2078-JMC and has been tasked, *inter alia*, with locating, managing, recouping, and distributing the assets of the Wilson-AB&C investment scheme associated with the criminal case United States v. Wilson, et al, 8:12-cr-320-JMC.

2. Upon information and belief, Defendants Melvin and Marilyn White ("Whites") are citizens of Bristol County, Massachusetts.

3. The instant Complaint is so related to the In Re Receiver, 8:12-CV-2078-JMC case and the underlying criminal case, United States v. Wilson, et al, 8:12-cr-00320 that it forms part of the underlying case or controversy.

4. The Receiver filed the Order of Appointment in the District of Massachusetts pursuant to 28 U.S.C. § 754 and venue is proper in the District of South Carolina. Service of process will be accomplished pursuant to 28 U.S.C. §1692.

1

5.  Subject matter jurisdiction in this case is based upon 28 USC § 1331 and 1367(a).

## GENERAL ALLEGATIONS

6.  As a result of a criminal investigation into the fraudulent investment scheme orchestrated by Ronnie Gene Wilson ("Wilson") and Atlantic Bullion & Coin, Inc. ("AB&C") from the year 2000 forward and the entry of a criminal information against Wilson and AB&C on April 11, 2012, an Order was entered, originally by text order on June 13, 2012 and as amended on July 25, 2012, October 17, 2012, February 14, 2013, and January 13, 2015, and October 29, 2015 ("Court Order"), appointing Beattie B. Ashmore as the Receiver and setting forth the duties of the Receiver to include marshaling and safeguarding the assets of Wilson and AB&C and other so defined entities (hereinafter the "AB&C Receivership Entities") in an effort to ultimately make a return to the victims of Wilson's criminal activities.

7.  The Court Order, *inter alia*, includes the directive to bring suit for the disgorgement of profits, including specifically instituting legal proceedings against individuals who are in possession of monies that flowed from the Ponzi scheme orchestrated by Wilson and AB&C. (See Court Order at 3-4.)

8.  On July 30, 2012, Wilson and AB&C pled guilty to two counts of mail fraud.

9.  On November 13, 2012, Wilson was sentenced to a 235 month term of imprisonment.

10.  On that same date, AB&C was sentenced to a five year term of probation and a fine was imposed.

11.  Wilson and AB&C were ordered to pay restitution in the amount of $57,401,009.00.

12.  On August 12, 2014, Wilson was again indicted on one count of obstruction of justice related to his efforts to secrete assets from the government and court appointed Receiver.

13. On October 6, 2014, Wilson entered another guilty plea and on December 10, 2014 was sentenced to an additional term of imprisonment.

14. To effectuate the fraudulent investment scheme, Wilson, through other persons and his company AB&C, recruited individuals to invest in silver bullion with promises of unconventionally high rates of return.

15. Individuals who participated in and profited from this fraudulent investment scheme, including Defendants, did so at the expense of those investors who lost part or all of their investment. A number of investors profited large sums, including Defendants, to the detriment of others. Such individuals, including Defendants, are "net winners" who have profited from a fraudulent investment scheme at the expense of other individuals who are financial victims of the fraudulent investment scheme.

16. Wilson and AB&C conducted the fraudulent investment enterprise in a manner that was openly unorthodox and noncompliant with federal and state laws, including, but not limited to S.C. Code Ann. § 35-1-301 regarding registering securities, S.C. Code Ann. § 35-1-401 regarding registering broker/dealers; and S.C. Code Ann. § 35-1-402(d) regarding utilizing unregistered agents, all requirements that are easily verified.

17. Individuals who invested with Wilson and/or AB&C, including Defendant, had access to independent means of verification regarding Wilson & AB&C, including the Financial Industry Regulatory Authority website which provides a quick and user friendly way to search for brokers through a service called BrokerCheck available at brokercheck.finra.org.

18. Individuals who invested with Wilson and/or AB&C, including Defendants, had access to the South Carolina Attorney General's website which provided information

including, but not limited to, a link entitled "If it Sounds Too Good To Be True, It Probably Is"-an article encouraging investors be on the lookout for fraudulent investment schemes. A number of the red flags contained in this article are applicable in the Wilson/AB&C investment scheme.

19. Individuals who invested with Wilson and/or AB&C, including Defendants, had access to the U.S. Securities and Exchange Commission website which provides information for individual investors, including the opportunity to ask a question. This website is www.sec.gov.

20. Wilson-AB&C offered investors a discount on the purchase of silver as an inducement to invest, making the purchase price of silver well below that which one could purchase silver for in any legitimate market.

21. Wilson-AB&C required investors who withdrew monies to wait a minimum of at least thirty days before a disbursement would be made which is unlike any regulated financial institution.

22. Investors who wanted to withdraw money were often times asked to provide an explanation regarding the reason for the withdrawal, again unlike any other regulated financial institution.

23. Wilson-AB&C told investors that a commission would be "worked in" but a commission was never reflected in any statements.

## STATEMENT OF FACTS

24. On July 3, 2008, the Whites made an initial "investment" of $6,769.72.

25. Subsequently, the Whites made an additional "investment" of $12,831.00 for a total investment of $19,600.72.

26. The Whites received $38,140.00 in returns between July 2010 and July 2011, resulting in a profit of $18,539.28.

27. Every Buy/Sell Transaction listed on statements produced by AB&C and provided to Defendants reflected a positive return on investment.

28. Consistent with past practices, Defendants never received nor was asked to sign any legal documents or contracts memorializing his financial arrangement with Wilson and/or AB&C including, but not limited to, an agreement to buy and sell, paperwork to open an account or paperwork related to the storage of the silver.

29. Defendants were not asked for and never provided Wilson or AB&C with a federal social security number, a state issued driver's license, or any other proof of identity uniformly asked for by financial institutions.

30. Defendants received sporadic statements reflecting false and/or inaccurate dates and information.

31. Defendants were not provided online access to financial accounts and could not access account balances through an online account.

32. Defendants never received a yearend report.

33. Defendants never issued a buy/sell order to Wilson-AB&C but rather gave Wilson-AB&C unlimited, unwritten permission to act, including buying and selling, without restriction.

34. Defendants never personally made or authorized a single trade but statements received by Defendants reflect that a number of trades occurred, each resulting in a positive and unrealistic return, with no loss on any sale reflected on the statements.

35. Defendants never received nor asked for any yearend tax accounting or report,

including, but not limited to, a K-1 or 1099.

36. The Receiver's records indicate that Defendants profited $18,539.28 as a result of their investment in the fraudulent investment scheme. This profit is the result of direct payments from the fraudulent investment scheme. (See **Exhibit A** attached hereto listing payments made to and from Wilson and AB&C.)

## FOR A FIRST CAUSE OF ACTION
### (FRAUDULENT TRANSFER: VIOLATION OF THE STATUTE OF ELIZABETH, S.C. CODE ANN. §27-23-10 AND/OR MASSACHUSETTS UNIFORM FRAUDULENT TRANSFER ACT, MASS. GEN. LAWS CH. 109A, §1, et seq.)

37. Plaintiff alleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs, as if fully repeated herein.

38. Defendants were investors in the Wilson-AB&C fraudulent investment or Ponzi scheme.

39. Defendants were the recipients and beneficiaries of payments associated with a return on investment from the Wilson-AB&C Ponzi scheme in gross excess of Defendants' initial investment.

40. Defendants received payments from Wilson-AB&C (through the Ponzi scheme) and such payments were from investments made by subsequent investors and were made with the actual intent of defrauding other investors participating in the Ponzi scheme.

41. At the time of the transfer, Wilson-AB&C was indebted to other investors of the Ponzi scheme in an amount grossly in excess of the amount of funds on hand.

42. The return on investment guaranteed and earned on deposits made with Wilson-AB&C were grossly in excess of comparable rates of return on other investments vehicles in the market at that time, which would have aroused the suspicions of a reasonable person.

43. At the time of the transfer, Defendants had notice of circumstances which would arouse the suspicion of an ordinarily prudent man and cause him to make inquiry as to the purpose for which the transfer(s) were being made.

44. Payments to or for the benefit of Defendants in the amount of $18,539.28 should be voided pursuant to South Carolina Code § 27-23-10 also known as the Statute of Elizabeth and/or the Massachusetts Uniform Fraudulent Transfer Act, Mass. Gen. Laws Ch. 109A, § 1, et seq. and should be repaid to the Plaintiff.

### FOR A SECOND CAUSE OF ACTION
### (UNJUST ENRICHMENT)

45. Plaintiff alleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs, as if fully repeated herein.

46. Defendants were investors in the Wilson-AB&C fraudulent investment or Ponzi scheme.

47. Defendants were the recipients of a non-gratuitous benefit from Wilson-AB&C in that Defendants were the recipients and beneficiaries of payments associated with a return on investment from the Wilson-AB&C Ponzi scheme in gross excess of Defendants' initial investment.

48. Payments to Defendants were made from the investments of other victims.

49. Defendants have retained the benefit of these payments to the detriment of other investors and the AB&C Receivership Entities.

50. It would be inequitable for Defendants to retain this benefit.

51. Defendants have been unjustly enriched and should repay Plaintiff $18,539.28 for the ultimate benefit of distribution to the Court-approved victims of the Ponzi scheme.

WHEREFORE, Plaintiff prays for an award of actual damages in the amount of $18,539.28, interest as allowed by law, consequential and incidental damages in amounts to be determined by the trier of fact, and for its costs, reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

Respectfully submitted,

*THE TOLLISON LAW FIRM, P.A.*

/s/L. Walter Tollison, III
L. Walter Tollison, III
Federal Bar No. 4117
Walt.tollison@thetollisonlawfirm.com
/s/Lauren S. Price
Lauren S. Price
Federal Bar No. 10406
Lauren.price@thetollisonlawfirm.com
24 Vardry Street, Suite 203
Greenville, South Carolina 29601
Phone:   (864) 451-7038
Fax:     (864) 451-7591
**Attorneys for the Receiver**

April 5, 2016
Greenville, South Carolina